DEAN *v.* DEAN.

5-63                               258 S. W. 2d 54

Opinion delivered May 25, 1953.

*Carl Langston* and *Wayne Foster,* for appellant.

*Talley & Owen, Norman D. Price, Dean R. Morley* and *L. Gene Worsham,* for appellee.

J. SEABORN HOLT, J. Appellant and appellee were married April 7, 1947, and separated March 3, 1951. January 28, 1952, appellant, (Frances Dean) proceeding under Act 68 of 1951 (§§ 34-2401—34-2414, Ark. Stats. 1947—Supplement 1951) filed petition against appellee, then a resident of Pennsylvania, asking for reasonable allowance for her support. Appellee answered with a general denial and in a cross complaint alleged that appellant was suffering from mental disease at the time of their marriage, which she fraudulently concealed from him and prayed that their marriage be annulled.

A trial on October 29, 1952, resulted in a decree granting appellant $60 per month for her support, $50 additional for her attorneys, and denying appellee the relief prayed in his cross complaint. Both parties have appealed, appellant on the ground that the award of $60, in the circumstances, was not sufficient for her support, and appellee from that part of the decree denying his prayer for annulment.

## (1)

We first consider appellee's cross appeal. On the record presented, we have concluded that the Chancellor's findings that in the consummation of this marriage, appellant was guilty of no fraud on appellee, was not against the preponderance of the testimony.

A number of witnesses testified as to appellant's general health (physical and mental) prior to her marriage to appellee. The effect of the testimony of these witnesses was that for about eighteen months just prior to the marriage, they along with Frances were employed by the War Assets Administration, and her work appeared to be satisfactory, and she appeared normal in every way.

Witness, Ed Moulton, former director of personnel of W.A.A., testified that Frances worked under his supervision prior to her marriage to Dean, that she held down a very responsible position in which she was efficient, capable and industrious. She came to the W.A.A. with a satisfactory history of work at the Camden Or-

dinance Plant and Camp Robinson and voluntarily quit work with W.A.A. on September 15, 1947. Mrs. Webber corroborated Moulton and testified that she was in charge of secretaries for W.A.A. during the time that Frances worked there, that her work was satisfactory and her deportment and actions were not different from those of other employes.

C. H. Burks, an employee of W.A.A., testified that for several months Frances worked with him in an office cage, where money was received, and that on occasions Frances was entrusted with as much as $90,000 for deposit. She was efficient, reliable, normal and he saw nothing unusual in her actions.

Mrs. Carlon and Bobby Jean Farabee testified that they worked with Frances for eighteen months prior to her marriage, that she appeared normal in all respects.

Frances testified that at the time she married appellee, she was earning approximately $300 per month and that prior to the time she worked with the W.A.A., she worked at Camp Robinson for the Finance Officer and prior to that employment, she worked at Camden as secretary to the Commanding Officer.

Appellee admitted that he lived with appellant intermittently from the date of their marriage (1947) to the date of their separation (1951), at one time for a period of fourteen months in Philadelphia.

While there is some evidence that appellant had had some medical treatment before her marriage, the testimony falls far short of showing any concealment of material facts on the part of Frances relating to such treatments that would amount to any fraud practiced on appellee sufficient to absolve him from the marriage contract and warrant an annulment. The trial court therefore correctly denied appellee's plea for annulment.

(2)

We have concluded, however, that the court erred in denying appellant's petition for an increase in the support allowance of $60. Our governing statute, § 34-

222

1211, Ark. Stats. 1947, provides: "When a decree shall be entered, the court shall make such order touching the alimony of the wife and care of the children, if there be any, as from the circumstances of the parties and the nature of the case shall be reasonable."

The amount of support must always depend upon the particular facts in each case, such as the husband's earnings and ability to pay, as well as the needs of the wife. Here, it appears conceded that appellee is earning between four and five hundred dollars per month in regular employment. In the past two or three years, appellant's health has become so impaired that she is unable to support herself, and is living with, and dependent on, her mother who does not possess the means to care for her. These parties are still husband and wife and it is appellee's duty to support Frances. In the circumstances, we hold that $60 per month is insufficient to meet appellant's present and necessary requirements. See *Pledger* v. *Pledger,* 199 Ark. 604, 135 S. W. 2d 851 and *Carty* v. *Carty,* 217 Ark. 610, 232 S. W. 2d 446.

Appellee will be required to pay appellant $100 per month for her support beginning May 1, 1953, subject to future modification, if required by changed conditions.

With the above modification, we affirm the decree, appellee to pay the costs here and in the court below, and an additional attorneys' fee of $150 to appellant's counsel.