Gordon Oren HADA *v.* Barbara Ann HADA

CA 83-96                                    663 S.W.2d 203

Court of Appeals of Arkansas
Division I
Opinion delivered January 25, 1984

*Thomas A. Martin, Jr.,* for appellant.

*M. E. Roger* and *D. Michael Hancock,* for appellee.

TOM GLAZE, Judge. This appeal involves the property settlement provisions of a divorce decree rendered in appellee wife's favor on June 10, 1982. Appellant husband contends the chancellor erred in two respects: (1) in using an award of alimony to effectuate an unequal division of the parties' home held in tenancy by the entirety; and (2) in awarding excessive alimony.

The parties were married for twenty-one years and were about forty-one years old at the time of the divorce. Their three children were past majority and in college. The appellee did not work outside the home during the marriage except for two brief stints as a nurse's aide, one in 1960 and the other in 1967 or 1968. At the time of the hearing, she testified that her only sources of support were from piano lessons she gave two days a week and food stamps. The appellant provided the sole financial support for the family throughout the marriage by working as a Methodist minister and as a carpenter. His income tax records for 1981 reflected a gross income of $12,000; he testified that was about as much as he ever earned. At the time of the hearing, he was a building contractor in Oklahoma, earning $8.00 an hour.

The chancellor awarded appellee a divorce and alimony of $150 a month for twelve months, to be reduced to $100 a month for the next twenty-four months, then to terminate. Appellant's arguments on appeal concern the chancellor's orders pertaining to both the real property which the parties owned as tenants by the entirety and the alimony award. The appellee resided on the subject property and neither party wanted it sold at the time of divorce. The chancellor awarded possession of the residence to the appellee for three years, provided she uses it as her principal residence. He ordered the appellant to pay all mortgage payments, taxes, and insurance; one-half of these were ordered to be reimbursed to him when the property is sold. Should appellee choose to vacate the residence before the three-year term ends, the chancellor ordered that she be paid $200 a month additional alimony — the apparent rental value of the property — for the balance of the designated term. In addition, the chancellor determined that $4,200 was the equity in the property, and the parties are to receive one-half of that equity amount if the property is sold. He further directed that, upon receiving that amount, the parties will share equally in any additional equity above $4,200, after appellant is reimbursed for his payments of the appellee's share of mortgage, insurance, and taxes. Finally, the chancellor provided that any mortgage payments, insurance, and taxes not reimbursed are to be considered additional alimony, support, and maintenance.

Appellant first contends that the chancellor erroneously used an award of alimony to effectuate an unequal division of the property held as tenants by the entirety. We disagree. The law is well settled that it is within the discretion of the trial court to award the innocent party in divorce suits the possession, for a limited time or for life, of a homestead held by the entirety. *Yancey* v. *Yancey*, 234 Ark. 1046, 356 S.W.2d 649 (1962). The Supreme Court has also held that the trial court may award the possession of the homestead to either spouse, upon such terms as appear to be equitable and just. *Schaefer* v. *Schaefer*, 235 Ark. 870, 362 S.W.2d 444 (1962).

In *Schaefer*, the chancellor awarded possession of the homestead to the wife, who was given custody of the parties'

children at the time of divorce. Later, the husband attained custody of the children, but the wife retained possession of the home; the husband was ordered to keep the house in repair. On appeal, the husband contended the award of possession and payment on the home's upkeep amounted to an impermissible award of alimony. In affirming the chancellor's action, the court pointed out the disproportionate incomes of the two parties and said that if the wife were evicted from the property, the chancellor presumably would require the husband to make monetary payments to his wife. In the instant case, as in *Schaefer,* the parties had widely disproportionate incomes and earning abilities; accordingly, the chancellor went to great lengths to provide for the wife's basic needs until she is able to provide for herself. In doing so, the chancellor awarded appellee possession of the property on terms both equitable and just. In fact, although the chancellor ordered appellant to pay the note, insurance and taxes on the house, the appellant will be reimbursed these payments *before* the final net proceeds are distributed equally between the parties. As was the case in *Schaefer,* the trial judge presumably could have given larger monthly monetary payments to the appellee to rent a home for the designated three-year term. Instead, the chancellor adopted an arrangement whereby appellant could ultimately receive part or all such payments made to temporarily provide a home for his wife of twenty-one years.

Before proceeding, we note appellant's argument that the chancellor's award violates the principles announced in *Belanger* v. *Belanger,* 276 Ark. 522, 637 S.W.2d 557 (1982), and *Warren* v. *Warren,* 273 Ark. 528, 623 S.W.2d 813 (1981). Neither *Belanger* nor *Warren* controls here. In *Belanger,* the contested properties were owned either by the husband or his parents; they were not homestead property held by the entirety. Thus, that case simply is not applicable here. The Supreme Court's decision in *Warren* is applicable only to the extent that the instant case involves entirety property. Within that context, we find the trial court's award totally consistent with the rules set forth in *Warren.* In this connection, the trial court determined the parties' property was held by the entirety, and its decree provided for the equal division of the property when it is sold. As we pointed out earlier, the trial court otherwise had authority to place

appellee in possession of the property until it is sold and to provide during this interim period for the appellant to pay the necessary monthly encumbrances.

Appellant also contends the chancellor abused his discretion by making an excessive and unreasonable award of alimony. Appellee was awarded $150 a month for twelve months to be decreased to $100 a month for the next twenty-four months, subject to termination at her remarriage. The evidence showed that appellee's only income was derived from teaching private piano lessons. This income varied from $7 to $21 a week in the summer and from $50 to $70 a week during the school term. In addition, appellee testified she had been forced to collect food stamps in amounts ranging from $21 to $70 a month. She testified that her needs included food, utilities and gasoline for her car. She expressed her desire to work, but testified that her attempts had been thus far unsuccessful because of her lack of training and experience.

Although appellant was somewhat evasive in his testimony concerning his income and expenditures, the record indicates that his net income was about $11,000 a year, or $916 a month.[1] He testified that he lives in a house owned by his aunt and that he pays no rent. His expenses include food, utilities, and gasoline for his car, totaling about $300 a month. At the time of the hearing, his children were living with him and sharing expenses, although he testified that all three children would be going to college soon and that he would help them with their expenses if he could. If we add to his expenses of $300 the $250 monthly mortgage payment and $24 monthly tax and insurance payments the chancellor ordered him to pay, his total expenditures are $574 a month, leaving appellant with approximately $342 a month. In view of these figures, we cannot say the chancellor was clearly erroneous in ordering appellant to pay alimony in the amount he set.

Affirmed.

Mayfield, C.J., and Cracraft, J., agree.

---

[1] Appellant testified that $1,000 of his income was derived from his share in certain oil leases. Although he indicated there was no guarantee that he would receive such lease payments in the future, the leases were still in effect at the time of trial.