David Donald SCHUMACHER *v.* Rebecca W. SCHUMACHER

CA 98-531 986 S.W.2d 883

Court of Appeals of Arkansas
Division II
Opinion delivered March 17, 1999

*Rose, VanWinkle & Woods*, by: *Jim Rose III*, for appellant.

*Gunn, Sexton, Canova & Platt*, by: *Jane Watson Sexton*, for appellee.

SAM BIRD, Judge. David Donald Schumacher, appellant/ cross-appellee (hereinafter appellant), appeals from a divorce decree entered by the Washington County Chancery Court contending that the court erred in its determination of the amount of alimony and child support that he should pay, and in its division of the marital assets and debts. Appellee/cross-appellant Rebecca W. Schumacher (hereinafter appellee) also appeals the order, arguing that the court erred in failing to award to her certain work-related bonuses that were paid to appellant by his employer for 1996 and 1997. We affirm in part and reverse and remand in part on direct appeal, and we reverse and remand on cross-appeal.

Appellant and appellee were married on July 29, 1978. The parties' only child, a son, was born in 1983, and at that time, appellee quit her employment. The couple separated on August 1, 1996, when appellant moved out of their home. For approximately fours months after he moved out, appellant voluntarily provided financial support to appellee. However, appellant ceased to provide any financial assistance to appellee from December 1996 to May 21, 1997.

In February of 1997, appellant filed for divorce in the Washington County Chancery Court, and appellee filed a counterclaim for separate maintenance. In May 1997, appellant dismissed his complaint for divorce, and the parties reached an agreement settling appellee's claim for separate maintenance, by which appellee was awarded custody of the parties' son, possession of their marital home, $750 per month in child support, and $1,500 per month for her separate maintenance. The parties also agreed that each would pay one-half of their marital debts as they became due and payable; however, the agreement did not identify those marital debts by creditor or amount. An amended decree of separate maintenance incorporating the parties' agreement was filed on July 2, 1997. In June 1997, appellant moved into the home of another woman, and they opened a joint checking account. On July 25, 1997, the appellee filed a complaint for absolute divorce.

Subsequent to the entry of the decree of separate maintenance and before the parties were granted an absolute divorce, the appellant failed to pay appellee the agreed $1,500 monthly separate maintenance. The appellant, instead, reduced appellee's separate maintenance payments by sums he contended that he was paying on their marital debt, thereby reimbursing himself for appellee's share of their marital debt that he claimed to be paying for her.

Following a trial on January 6, 1998, the court granted appellee an absolute divorce on the grounds of general indignities. By its decree, the court granted appellee custody of the couple's son, awarded appellee possession of the marital home and its contents during the minority of their son, ordered appellant to pay $750 per month in child support until their son's eighteenth birthday, and ordered appellant to pay $1,500 per month in alimony until appellee's remarriage or death. Appellee was also awarded one-half of the 1,000 shares of Kennametal stock that were owned by the couple, one-half of the money in the checking account that had been opened and maintained by appellant subsequent to the parties' separation, and one-half of $54,918.84, which the appellant had vested in a 401(k) retirement savings plan. The court also ordered appellee to maintain the mortgage payments on the mari-

tal home and ordered the appellant to maintain the casualty insurance on it.

The appellant brings this appeal arguing six points for reversal. First, he argues that the court erred in refusing to use the child-support chart in setting the amount of child support. Second, he argues that the court abused its discretion in awarding permanent alimony in the amount of $1,500. For appellant's third, fourth and sixth points, he makes arguments concerning the division of marital property and what constitutes marital property. And appellant argues for his fifth point on appeal that the court erred in ordering him to pay the casualty insurance premiums on the marital residence. We reverse and remand on appellant's first and second points on appeal, and we affirm on appellant's other remaining points.

Appellee cross-appeals, arguing that the court erred in refusing to award her one-half of appellant's work-related bonuses for 1996 and 1997. We agree, and we reverse and remand on appellee's cross-appeal.

### Child Support

For appellant's first point, he argues that the court erred in not setting child support by reference to the most recent revision of the family-support chart. Appellant's net monthly income was determined to be $6,309. He argues that on that amount of monthly income, according to the family-support chart, he should be required to pay $946.50 per month in child support; however the court ordered, instead, that he pay only $750 per month. Appellant makes the seldom, if ever, heard argument that he has not been ordered to pay enough child support. However, he quickly assures us that his motive is less than eleemosynary when he argues that he has been ordered to pay too much alimony, and that while his child support should be increased, the amount the court ordered that he pay in alimony should be reduced. Appellant reasons that since he will probably be required to pay alimony much longer than he will be paying child support, it is financially advantageous to him, and it will also conform with the require-

ments of the law, if the child support and alimony are set in accordance with the family-support chart.

After the hearing in which appellee was awarded a divorce, the court made the following oral findings relating to the issues of child support and alimony:

> Barely six months ago another Court directed Mr. Schumacher to pay $1,500.00 a month for separate maintenance and $750 a month of child support. If you add the two figures that the Chart shows it comes to $2,271.00. If you pick up on the $2,250 total from the Order of the other Court, you've got [an insignificant difference.] There appears to be no material change of circumstances, therefore, this Court directs that alimony shall be payable in the sum of $1,500.00 a month and child support in the sum of $750.00 per month.

■ ■ Although the amount of child support a chancery court awards lies within the sound discretion of the chancellor and will not be disturbed on appeal absent an abuse of discretion, reference to the family-support chart is mandatory. *Thompson v. Thompson*, 63 Ark. App. 89, 974 S.W.2d 494 (1998); *Woodson v. Johnson*, 63 Ark. App. 192, 975 S.W.2d 880 (1998); *Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998). *See also* Ark. Code Ann. § 9-14-106 (Repl. 1998). The family-support chart itself creates a rebuttable presumption that the amount of child support set forth therein is the correct amount of child support to be awarded, and that such amount can be disregarded only if the chancery court makes express written findings or specific findings on the record that application of the support chart is unjust or inappropriate. *Woodson v. Johnson* and *Anderson v. Anderson, supra.* Relevant factors to be considered by the court in determining whether to deviate from the amount of child support set by the family-support chart are set forth in *Administrative Order No. 10: Arkansas Child Support Guidelines*, 329 Ark. 668 (1997).

■ ■ In the case at bar, the chancellor did not refer to any of these factors when he deviated from the child-support guidelines. He merely referred to the separate-maintenance order entered by a different court six months earlier and stated that there had been no material change of circumstances over the last six months; therefore, he made the same award of alimony and child

support. This court will consider a change of circumstances when *modifying* an existing child-support award. *Payton v. Wright*, 63 Ark. App. 33, 972 S.W.2d 953 (1998). However, in the case at bar, the chancellor was setting the initial amount of child support incident to the entry of an absolute decree of divorce. While there was in existence in another proceeding an order awarding child support, the court in the case at bar was not *modifying* an *existing* child-support award. Although the chancellor did refer to the family-support chart and noted that it called for child support and alimony in the amounts of $946.50 and $1,325.10, respectively, he declined to order payment of those sums by the appellant because their total ($2,271.60) was not significantly different than the total of the amounts of child support and alimony ($2,250) that had been set approximately six months earlier by another court in the disposition of appellee's action for separate maintenance. Except for noting this insignificant difference in the totals, the chancellor did not make any findings of fact as to whether any of the relevant factors justified a conclusion that the amount of child support set forth in the family-support chart was inappropriate or unjust. Therefore, we reverse and remand as to the issue of child support in order that the chancellor can properly consider whether any of the relevant factors set forth in the Administrative Order No. 10 justify a deviation from the amount of child support fixed by the family-support chart.

### Alimony

For appellant's second point on appeal, he argues that the court abused its discretion in awarding the appellee permanent alimony in the amount of $1,500 per month. First, he argues that the chancellor did not set forth any factors that he considered in making the award. And the appellant asserts that if this court does not reverse the chancellor, then this court should award temporary alimony in the amount of $1,325.10.

The purpose of alimony is to rectify, insofar as is reasonably possible, the frequent economic imbalance in the earning power and standard of living of the divorced husband and wife. *Mitchell v. Mitchell*, 61 Ark. App. 88, 964 S.W.2d 411 (1998). The award of alimony is a matter resting solely in the chancery court's

discretion. *Mitchell v. Mitchell, supra; Burns v. Burns,* 312 Ark. 61, 847 S.W.2d 23 (1993). The alimony award must always depend upon the particular facts of each case. *Dean v. Dean,* 222 Ark. 219, 258 S.W.2d 54 (1953). The ability of one party to pay and the need of the other party are primary factors to be considered in awarding alimony. *Burns v. Burns,* and *Mitchell v. Mitchell, supra.* To balance these primary factors, a chancery court should consider certain secondary factors, including the financial circumstances of both parties; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each of the parties; and the earning ability and capacity of both parties. *Anderson v. Anderson, supra.* The chancellor's award of alimony will not be reversed absent an abuse of discretion. *Mitchell v. Mitchell* and *Anderson v. Anderson, supra.* In *In Re: Administrative Order No. 10: Arkansas Child Support Guidelines, supra,* the supreme court stated that when determining temporary support, a dependent custodian should be counted as two dependents as a guide for determining support. And in final hearings, on issues of alimony, the court should consider all relevant factors, including the chart, in determining the amount of spousal support that should be paid. *In Re: Administrative Order No. 10: Arkansas Child Support Guidelines, supra.*

In the case at bar, the appellee showed a need for alimony. First, she has not worked full time for fourteen and one-half years so that she could stay at home and raise the couple's son. Second, a doctor testified that she is precluded from working long hours because of her illnesses. Third, appellee, over the past fourteen years, has never earned more than $800 per year, in the years that she did work. Clearly, she could not find a job in which she would earn enough to keep her in the standard to which she had become accustomed. Because of her testimony and the testimony of her doctor, the chancellor cannot be said to have abused his discretion in awarding alimony.

However, the chancellor did not consider the family-support chart, as the appellant argues, in determining the amount of alimony. Again, he referred to the separate-maintenance award of another court and stated that there had not been a material change of circumstances; therefore, he would award the same

amount of child support and alimony. That constituted reversible error; therefore, we reverse and remand this issue to the chancery court in order to consider all relevant factors when determining the amount of alimony that should be awarded.

## Marital Property

For appellant's third, fourth, and sixth points on appeal, he makes certain arguments concerning what is and what is not contained within the definition of marital property. Marital property is defined by Ark. Code Ann. § 9-12-315 (Repl. 1998) as:

(b) . . . all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired prior to marriage, or by gift, or by bequest, or by devise, or by descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of divorce from bed and board;

(4) Property excluded by valid agreement of the parties;

(5) The increase in value of property acquired prior to marriage or by gift, bequest, devise, or descent, or in exchange therefor;

(6) Benefits received or to be received from a workers' compensation claim, personal injury claim, or social security claim when those benefits are for any degree of permanent disability or future medical expenses; and

(7) Income from property owned prior to the marriage, or from property acquired by gift, bequest, devise, or descent, or in exchange therefor.

Appellant contends that the trial court erred in finding that deposits that appellant had made into a joint checking account with another individual during the time the separate maintenance decree was in effect were marital property and, thus, appellee was entitled to one-half. He states that during the time he was making these deposits, he was supporting appellee and their son and that

the separate checking account was merely for his living expenses. He also argues that the court erred in ordering him to pay one-half of the various credit card debts incurred by the appellee during the separation while he was paying court-ordered separate maintenance. And he argues that the appellee should not have benefitted from the sale of stock because the stock does not constitute marital property.

As defined in § 9-12-315, marital property is all property acquired subsequent to marriage except for those seven categories specifically listed. While the statute does exclude from the marital-property definition property that is acquired after a divorce from bed and board, it does not exclude property that is acquired after a legal separation. Therefore, the funds acquired by appellant and deposited into the joint checking account prior to their divorce are marital property subject to division by the court.

Likewise, the credit card debts incurred by appellee during the period of the parties' legal separation were marital debts that the chancellor had discretion to divide between the parties.

The 1,000 shares of Kennemetal stock were acquired during the marriage and sold during the marriage, and are considered marital property. The appellant concedes in his argument that he "was vested with a certain amount of company stock, which he sold and deposited the proceeds into a bank account."

Appellant seems to argue that since he was supporting appellee during the legal separation, the marital property should be distributed differently. He cites no authority for this argument. Neither the code nor case law make an exception for the division of marital property that has been acquired after a legal separation has been granted. *See* Ark. Code Ann. § 9-12-315.

*The House*

The appellant argues that because the appellee has the use and benefit of the home, he should not be responsible for the insurance payments on the home as ordered by the court. We disagree.

 The court has wide discretion in awarding either party the possession of the home, and the award of possession of the home is subject to such terms as the chancellor deems to be equitable and just. *Hodges v. Hodges*, 27 Ark. App. 250, 770 S.W.2d 164 (1989); *Cantrell v. Cantrell*, 10 Ark. App. 357, 664 S.W.2d 493 (1984); *Hada v. Hada*, 10 Ark. App. 281, 663 S.W.2d 203 (1984). It cannot be said to be unjust that appellant pays the casualty insurance while appellee pays the mortgage payment. When the house is sold, both parties will share in the equity resulting from appellee's payment of the mortgage. Likewise, should the house be damaged in some way, again both parties would benefit from the insurance proceeds, even though only appellant paid the premiums.

### Appellee's cross-appeal: work-related bonus

Appellee cross-appeals arguing that the court abused its discretion by not awarding her one-half of the appellant's 1996 and 1997 work-related bonus compensation. In February 1997, the appellant received a bonus of $14,000 for work performed in 1996. The court did not award the appellee one-half of the bonus. The court wrote, "That the Court finds that the defendant received a bonus through his employment during the separation in the amount of Fourteen Thousand Dollars ($14,000.00). That the plaintiff has no interest in said bonus."

The chancellor also refused to award appellee one-half of the bonus he was to receive in 1998 for work performed in 1997. At trial on January 6, 1998, there was testimony that the amount of the award for 1997 had not yet been determined. The chancellor held that since the amount of the 1997 bonus had not been determined, the appellee was not entitled to one-half of it.

 The court erred. Appellee should be awarded one-half of the $14,000 bonus paid to appellant by his employer for 1996, and one-half of the bonus he earned for 1997. *See Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987). In *Wilson* the court held,

> Because most of appellee's bonus accrued and, therefore, was acquired during his marriage to appellant, we hold the chancellor abused his discretion in finding that none of the bonus was mari-

tal property. Therefore, we reverse and remand this cause on this point.

294 Ark. at 200, 741 S.W.2d at 644. Therefore, we reverse and remand as to this issue, with directions for the chancellor to award appellee one-half of appellant's 1996 and 1997 work-related bonuses.

Based upon the foregoing, we affirm in part, and we reverse and remand in part on direct appeal, and we reverse and remand on cross-appeal.

Affirmed in part and reversed and remanded in part on direct appeal, and reversed and remanded on cross-appeal.

HART, J., agrees.

ROGERS, J., concurs.

JUDITH Rogers, Judge, concurring. I concur in the excellent majority opinion that was written in this case. I write separately, not because I reject the final decision of the chancellor or the amount of child support and alimony set forth in the order, but because the chancellor should have referred to the family-support chart before beginning the analysis and determining any deviation. I also want to emphasize that the chancellor obviously tried to make an equitable decision, and I cannot fault him for the result that emerged. I agree that under the facts in the case at bar, the chancellor should have first set out specific findings on the record to support his deviation from the guidelines.

Here, the chancellor in the divorce action could have adopted the agreement of separate maintenance the parties had reached six months earlier. The agreement was entered of record a short time after appellant moved into another woman's home and less than one month before he filed for divorce. If the chancellor had found that the doctrine of waiver or estoppel applied due to the previous agreement of the parties or that other equitable considerations under the statute warranted an unequal division, it should have been so stated for the record. Again, the chancellor should have referred to the family-support guidelines and articulated his reasons for deviating from the amounts set forth in the chart.