

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-1078

| | |
|---|---|
| PAUL D. FOX<br><br>APPELLANT<br><br>V.<br><br><br>PERLA YASMINE ESPINOZA FOX<br>APPELLEE | Opinion Delivered JUNE 3, 2015<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. DR-14-76]<br><br>HONORABLE ANNIE POWELL HENDRICKS, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**KENNETH S. HIXSON, Judge**

Appellant Paul Fox and appellee Perla Fox were divorced by a decree entered by the Sebastian County Circuit Court on August 18, 2014. Perla was awarded custody of the parties' four minor daughters, ranging in age from seven to sixteen, and Paul was given standard visitation. Paul was ordered to pay $2193 in bi-monthly child support based on his bi-monthly net income of $8090.[1] Further, Paul was ordered to pay bi-monthly alimony in an amount which increased over the years commensurately as his child-support obligation decreased.

Paul now appeals from the divorce decree, arguing that the trial court erred in not granting his request to award the parties joint custody of the children. Paul also argues that

---

[1]As used by the trial court in the divorce decree, bi-monthly means twice a month.

SLIP OPINION

the trial court erred in awarding child support and alimony based on his previous employment income, asserting that he was unemployed and without income at the time the divorce decree was entered. We affirm the award of primary custody to Perla. However, we reverse and remand for reconsideration of child support and alimony.

Paul and Perla were married in 1996, and they lived in Mexico for the first four years of their marriage. The parties' two oldest daughters were born while the parties lived in Mexico. Paul worked for Tyson Foods and was eventually promoted to general manager.

In 2000, the parties moved to Springdale, Arkansas, where their third daughter was born, and Paul worked for Tyson Foods as an executive in its international department. Paul's annual salary in 2000 was $200,000, and it had increased to $260,000 by 2006. Paul's employment between 2000 and 2006 required frequent overnight travel.

In 2006, the parties moved to Idaho, where their youngest daughter was born, and Paul was employed with Dickinson Frozen Foods as president and CEO. Paul worked for Dickinson for four years at a base salary of $280,000.

In 2010, Paul accepted a job in Michigan with Marfrig at an annual salary of $300,000. Perla and the girls continued to live in Idaho, and Paul would commute from Michigan to visit his family on weekends.

In January 2012, Paul accepted employment in Fort Smith, Arkansas, as CEO of OK Foods, at an annual salary of $340,000. Paul continued to visit his family on weekends in Idaho, and Perla and the girls moved to Fort Smith after the school year ended in June 2012.

SLIP OPINION

In January 2014, Perla filed for divorce in Sebastian County Circuit Court on grounds of general indignities, and Paul subsequently counterclaimed for divorce on the same grounds. Perla asked that she be awarded custody of the children, and Paul requested joint custody.

At the divorce hearing held on June 30, 2014, there was testimony that both Paul and Perla are excellent parents and have a close relationship with their children. During the marriage, Paul was the breadwinner and Perla was a stay-at-home mom.

Perla testified that Paul's employment with OK Foods ended in February 2014, and that he had a severance package that paid him through the middle of August 2014. Perla stated that, when Paul was working, his job was time-consuming and stressful. She indicated that on a typical workday, Paul would leave the house early in the morning and arrive home around 6:30 or 7:00 in the evening. Perla stated that all of Paul's employment during the marriage was demanding.

Perla testified that, on a typical day, she wakes the girls up, makes their lunches, helps the youngest one get dressed, and takes them to school. After the girls arrive home, Perla monitors their homework and cooks dinner for them. Perla also said that she takes the children to doctor and dentist appointments, as well as extracurricular activities. Perla stated that it was very rare for Paul to take the girls to extracurricular activities, although he sometimes attended their games on Saturday mornings. Perla also said that she attended every parent-teacher conference, which Paul did not attend. Perla stated that she had no desire to exclude Paul from being involved with his daughters because it was important for them to have their father involved in their lives. However, she also testified:

I am asking for custody because I have always been with my daughters since they were born. I am the one that nurtures them and counsels them. I take them to activities and am always there. I cook and clean for them. They are my life. It's what I do.

In her testimony, Perla acknowledged that on a few occasions during the marriage she took trips alone, and that on those occasions Paul or Paul's mother would care for the children. Perla stated that she was comfortable with Paul caring for the children in her absence, and also with Paul's mother spending time with the children. Perla indicated that the majority of her trips were to visit her parents who lived in Mexico, and that one of the reasons she would leave the girls at home on these visits was for safety reasons because of kidnappings and insecurity in the town where her parents lived.

Paul testified on his own behalf, and he confirmed that his employment with OK Foods had ended in February 2014 and that his severance pay would terminate in mid–August 2014. In Paul's affidavit of financial means, he indicated that his bi-monthly net pay from the severance package was $8090, which would terminate on August 12, 2014. Paul testified that he had been exploring other employment and income–producing activities. He stated that he was diligently seeking employment and had every confidence that he could find a good job. Paul stated that his employment prospects would likely be at a salary of around $200,000, although he would probably have to move from Fort Smith to earn that kind of money.

Paul acknowledged that Perla had spent more time with the girls during their marriage than he had due to his work schedule. However, he vehemently disagreed with any suggestion that he was a disinterested or absentee father. Paul stated that Perla had done an admirable job caring for the girls, but he was confident that he was equally capable of caring

for them. Paul also gave the opinion that Perla was trying to alienate the girls from him. Paul proposed a joint-custody arrangement so that he and Perla would each have equal time with the children.

Paul's first argument on appeal is that the trial court erred in awarding Perla primary custody of the children, and that joint custody should have been awarded. Paul acknowledges that our court has frequently stated in the past that joint custody is not favored in Arkansas. *See, e.g.*, *Collier v. Collier*, 2012 Ark. App. 146. However, by adoption of Act 1156 of 2013, the General Assembly has changed the law in this regard. In particular, Arkansas Code Annotated section 9-13-101(a)(1)(A)(iii) (Supp. 2013) now provides, "In an action for divorce, an award of joint custody is favored in Arkansas."

Particularly in light of this recent legislative change, Paul contends that there is a clear suitability for joint custody in this case. He asserts that he is perfectly capable of providing care and supervision for the children, as was evidenced by his caring for them while Perla had taken vacations. Paul further cites testimony in the record demonstrating that he had a close relationship with his daughters and was very involved in their lives. Moreover, Paul contends that there was no evidence of a lack of cooperation between the parties such that joint custody would be undesirable. Although Perla was privileged to be afforded the time and opportunity during the marriage to be the primary caregiver to the children, he submits that he should not be penalized for pursuing time-consuming and stressful employment to provide for the family. Paul also suggests that he is at a disadvantage because he will likely have to relocate to secure

employment, and that an award of joint custody would facilitate his ability to relocate the children.[2]  For these reasons, Paul argues that joint custody should be awarded.

Arkansas Code Annotated section 9–13–101(a)(1)(A)(i) (Supp. 2013) provides that, in an action for divorce, the award of custody of a child born of the marriage shall be made without regard to the sex of a parent but solely in accordance with the welfare and best interest of the child.  On appeal, in custody matters, this court considers the evidence de novo and does not reverse unless the trial court's findings of fact are clearly erroneous.  *Chaffin v. Chaffin*, 2011 Ark. App. 293.  A finding is clearly erroneous when, although there is evidence to support it, the court is left with a definite and firm conviction that the trial court made a mistake.  *Id.*  Due deference is given to the trial court's superior position to judge the credibility of the witnesses.  *Id.*  The supreme court has held that there is no other case in which the superior position, ability, and opportunity of the trial court to observe the parties carries a greater weight than one involving the custody of minor children.  *Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001).  The best interest of the children is the polestar in every child–custody case; all other considerations are secondary.  *Id.*

On our de novo review, we hold that the trial court did not clearly err in finding that it was in the girls' best interest to be placed in the primary custody of their mother.  Although our legislature has amended Arkansas Code Annotated section 9–13–101 to state that an award

[2]We note that, even if joint custody were awarded in this case as urged by appellant, the presumption in favor of the relocation of a primary custodian as announced in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), is inapplicable when parents share joint custody.  *See Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234.

of joint custody is favored in Arkansas, joint custody is by no means mandatory, and our law remains consistent that custody awards are to be made solely in accordance with the welfare and best interest of the children. *See* Ark. Code Ann. § 9-13-101(a)(1)(A)(i); *Taylor, supra.* The record in this case demonstrates that Perla was the primary caregiver during the parties' marriage and that the four girls have done exceptionally well, both socially and in school. We have held that the fact that a parent has been the child's primary caregiver is relevant and worthy of consideration in determining which parent should be granted custody. *Thompson v. Thompson*, 63 Ark. App. 89, 974 S.W.2d 494 (1998). Although the record is clear that both Perla and Paul are good parents who love their children, on this record we are not left with a definite and firm conviction that the trial court made a mistake in rejecting Paul's request for joint custody, and instead awarding primary custody to Perla subject to Paul's reasonable visitation with the girls.

Paul's remaining arguments on appeal challenge the trial court's child-support and alimony awards. The trial court ordered Paul to pay $2193 in bi-monthly child support based on the application of the family-support chart to his bi-monthly severance-pay net income of $8090. Paul was also ordered to pay $395 in bi-monthly alimony, which brought his total bi-monthly support obligation to $2588. The decree provided that alimony would continue for twelve years, and more particularly provided:

> As each child turns 18 years of age and/or graduates from high school, whichever event occurs last, then Defendant's child support obligation will consequently reduce by one child on the Family Support Chart. It is the Court's intention to keep the bi-monthly payment of $2588.00 intact—therefore, as child support reduces by one child each time a child graduates and/or turns 18 years of age, alimony will increase by one child on the chart, leaving the bi-monthly payment amount the same.

SLIP OPINION

We first address the child-support issue. Our standard of review from a child-support order is de novo on the record, and we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219. As a rule, when the amount of child support is at issue, we will not reverse the trial court absent an abuse of discretion. *Browning v. Browning*, 2015 Ark. App. 104, 455 S.W.3d 863. However, a trial court's conclusion of law is given no deference on appeal. *Id.*

Paul argues that the trial court erred in its calculation of child support because it was based on Paul's bi-monthly net income of $8090, which terminated on August 12, 2014—six days before the divorce decree was entered on August 18, 2014. We agree. The hearing was held on June 30, 2014, but the court took the matter under advisement. The divorce decree was not entered until August 18, 2014. Between the date of the hearing and the date the divorce decree was filed, the severance pay that Paul had been receiving for six months had terminated. The undisputed record showed that Paul was unemployed at the time of the divorce hearing, and that his severance pay terminated on August 12, 2014. Therefore, at the time the divorce decree was entered, contrary to the trial court's finding of fact, Paul had no income.

Arkansas Code Annotated section 9-12-312 (Supp. 2013) provides, in relevant part:

(a)(3)(A) In determining a reasonable amount of child support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart.
　(B) It shall be a rebuttable presumption for the award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded.

Subsection (a)(3)(C) provides that, only upon written specific findings that application of the support chart would be unjust or inappropriate, shall the presumption be rebutted.

Because Paul was unemployed and receiving no income on the date of the divorce, there existed a rebuttable presumption that the child support should be based on his zero income as applied to the support chart. The court could have rebutted that presumption by making written specific findings that the application of the support chart would be unjust or inappropriate. The court did not make such written findings. Therefore, we hold that it erred in its calculation of child support.

That does not mean, however, that Paul should not be required to pay child support in the same, or some other, amount. The court has the discretion to impute income under Section III(d) of Administrative Order Number 10, which provides:

> *Imputed income.* If a payor is unemployed or working below full earning capacity, the court may consider the reasons therefor. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a payor up to his or her earning capacity, including consideration of the payor's life-style. Income of at least minimum wage shall be attributed to a payor ordered to pay child support.

In *Grady v. Grady*, 295 Ark. 94, 747 S.W.2d 77 (1988), our supreme court held that a trial court's decision on whether to impute income must be based on the facts and circumstances of each case. We reverse the child support awarded by the trial court and remand for the trial court to reassess Paul's child-support obligation.

Paul also challenges the alimony award, contending that it was erroneously based on income he was no longer receiving, and also that it should not have escalated over a period of twelve years. The primary factors in determining alimony are the financial need of one

SLIP OPINION

spouse and the other spouse's ability to pay. *Johnson v. Cotton-Johnson*, 88 Ark. App. 67, 194 S.W.3d 806 (2004). An alimony award is within the sound discretion of the trial court and will not be reversed unless there is an abuse of that discretion. *Jones v. Jones*, 2014 Ark. App. 614, 447 S.W.3d 599. Here, the trial court specifically increased monthly alimony over the years commensurate with the amount of decreasing child support. As such, child support and alimony are inextricably intertwined. Because we reverse and remand for recalculation of Paul's child-support obligation, we also remand the issue of alimony as it necessarily will be affected by the resolution of the child-support issue. *See Boudreaux v. Boudreaux*, 2009 Ark. App. 685, 373 S.W.3d 329.

Affirmed in part; reversed and remanded in part.

GLADWIN, C.J., and VIRDEN, J., agree.

*Daily & Woods, P.L.L.C.*, by: *Jerry L. Canfield*, for appellant.

*Byars, Hickey & Hall, PLLC*, by: *Kevin L. Hickey*, for appellee.