SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-16-243

| | |
|---|---|
| | **Opinion Delivered** October 26, 2016 |
| DONALD ERNEST THURMON<br>APPELLANT | APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70DR-14-197] |
| V. | |
| BRITTANY THURMON<br>APPELLEE | HONORABLE DAVID F. GUTHRIE, JUDGE |
| | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## BRANDON J. HARRISON, Judge

Donald Ernest Thurmon appeals a July 2015 divorce decree that granted Brittany Thurmon a divorce, custody of their child, and divided the couple's property. He also appeals from the deemed denial of his posttrial motion to alter or amend the decree. We affirm the circuit court's custody decision and reverse and remand its property division.

I.

Thurmon first argues that the circuit court erred in awarding custody of the parties' two-year-old child, B.T., to Brittany, because it was not in their son's best interest to do so. Arkansas Code Annotated section 9-13-101(a)(1)(A)(i) (Repl. 2015) provides that, during a divorce, the award of custody of a child of the marriage must be made solely on the welfare and best interest of the child. In determining the best interest of the child, the court "may consider the preferences of the child if he or she is of a sufficient age and mental capacity to

reason, regardless of chronological age." Ark. Code Ann. § 9–13–101(a)(1)(A)(ii). In an action for divorce, an award of joint custody is favored in Arkansas. Ark. Code Ann. § 9–13–101(a)(1)(A)(iii).

In this case each party made some good points on the custody issue, but the circuit court's custody determination was not clearly erroneous. *Fox v. Fox*, 2015 Ark. App. 367, 465 S.W.3d 18 (standard of review). There is some evidence that Donald is available to care for B.T. seven days in a fourteen-day period; there was also evidence that, when he works graveyard shifts, he is not able to care for B.T. The record shows, if so credited, that Brittany was the primary caregiver to B.T. during the marriage and that her schedule allows her to drop off and pick up B.T. each day from daycare. We have held that a parent being the child's primary caregiver is a relevant factor when determining which parent should be granted custody. *Fox*, 2015 Ark. App. at 7, 465 S.W.3d at 23.

The circuit court could also weigh and credit testimony that Donald had been abusive at times towards Brittany's daughter from a previous relationship and that he had hit Brittany on occasion. *See Davis v. Sheriff*, 2009 Ark. App. 347, at 8, 308 S.W.3d 169, 173 (a court may consider an individual's purposeful injury to a child whose welfare is not before the court when determining the best interests of children). It was undisputed that Donald did not have a close relationship with his adult son from a different marriage. There was disputed testimony about whether Donald had threatened to kill himself with a gun in some woods near the house in March 2014. The police were called, though no one was arrested and the gun was returned to Donald. The circuit court could credit this and other

SLIP OPINION

testimony about Donald's mental instability and decide whether and how it might affect his parenting. *See Nicholson v. Harrison*, 2013 Ark. App. 44, 425 S.W.3d 851.

There is more testimony on both sides but there is no need to go into more detail. It suffices to state that, having reviewed the record and the parties' arguments, we hold that the circuit court's decision that Brittany should have custody of B.T. was not clearly erroneous, given the record as a whole. We therefore affirm the court's decision.

## II.

Donald's argument that dividing the "marital" home was an error because it was his premarital property is well taken. The circuit court in this case ruled that

> [Brittany] shall have possession of the marital home and parties shall divide evenly the mortgage payments thereon. When the child reaches the age of majority, the house shall be sold, the debt paid and the equity divided. [Brittany] shall pay the utilities and the parties shall divide maintenance and repairs.

Both parties agreed that the marital home is located at 810 Marrable Hill, in El Dorado, and that Donald owned the home before he married Brittany. Brittany testified she had lived there two years, that the land had never been deeded to her, and that Donald made the mortgage payments on the house. She also said that she intended to quitclaim any interest in the Marrable Hill home to Donald, and he would assume the debt on the property. On appeal, Brittany changed her mind for some reason. Now she argues that the court's decision is correct enough because the "marital" home is the "homestead" and Arkansas courts granting decrees of divorce may award possession of the homestead to either of the parties for such time, and upon such terms and conditions, as are equitable and just.

Marital property means all property acquired by either spouse subsequent to the marriage, with certain exceptions. Ark. Code Ann. § 9-12-315(b). Our property-division statute, (Ark. Code Ann. § 9-12-315(a)(2)), permits the division of nonmarital property if the court deems it equitable after considering several factors:

- the length of the marriage;

- age, health, and station in life of the parties;

- occupation of the parties;

- amount and sources of income;

- vocational skills; employability; estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;

- contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and

- the federal income tax consequences of the court's division of property.

Here, the parties agreed that Donald had acquired the home before the marriage, and there was no evidence that it was purchased with the intent to make it the couple's marital home. *See Fell v. Fell*, 2015 Ark. App. 590, 473 S.W.3d 578 (the court erred in finding that the home the husband bought before the marriage was marital property). The court treated the Marrable Hill house as marital property, but it wasn't, and no reason was provided why the house should not be returned to Donald. *Wilson v. Wilson*, 2016 Ark. App. 256, at 2–4, 492 S.W.3d 534, 536. As to Brittany's homestead point, the cases she cites address possession of a homestead held by husband and wife as tenants by the entirety, which is not this case. *See, e.g., Hada v. Hada*, 10 Ark. App. 281, 663 S.W.2d 203 (1984).

A circuit court's property division will be affirmed unless it is clearly erroneous or clearly against the preponderance of the evidence. *Baker v. Baker*, 2013 Ark. App. 543, 429 S.W.3d 389. On this record, we hold that the circuit court clearly erred on the martial-home issue. So we reverse and remand for the court to award the home to Donald as his nonmarital property, unless it expressly justifies a distribution to Brittany pursuant to section 9–12–315(a)(2).

There is also a problem with the division of the 401(k) savings account. The divorce decree states: "The 401(k) savings plans through the employment of the parties shall be divided equally." The record, however, does not reveal whether this particular account was fully or partially vested, or what amount of money was contributed during the marriage versus prior to the marriage. The circuit court did not specify whether all, or part, of the 401(k)'s assets were marital property. So we cannot tell from the decree whether the court equally divided marital property or distributed nonmarital property to a nonowning spouse for some reason. Given this uncertainty, we remand the case so the circuit court may reconsider the division of the 401(k) account and provide findings to support whatever decision it makes. *See Wilson*, *supra*.

Affirmed in part; reversed and remanded in part.

VIRDEN and BROWN, JJ., agree.

*Depper Law Firm, Inc.*, by: *Robert L. Depper, Jr.*, for appellant.

*Ronald L. Griggs*, for appellee.