GRIFFEN *v.* NEWCOM.

4-9545                                        240 S. W. 2d 648

Opinion delivered June 11, 1951.

Rehearing denied July 9, 1951.

*Douglas Bradley,* for petitioner.

*Bon McCourtney* and *Claude B. Brinton,* for respondent.

MINOR W. MILLWEE, Justice. Appellant, Raymond Griffen, instituted this proceeding by *habeas corpus* for custody of his nine-year-old daughter against the appellees, Earl Newcom and wife, who are the child's maternal grandparents. The chancellor found that ap-

pellees were entitled to retain custody of the child and dismissed appellant's petition for want of equity.

Appellant and Norma Newcom, daughter of appellees, were married in September, 1939, and the child, Ramola Ann, was born in November, 1940. Appellant and Norma were living in St. Louis, Missouri, in the spring of 1942 when they separated and brought Ramola Ann to appellees in Craighead County, Arkansas, and asked them to keep the child. In April, 1944, Norma obtained a divorce from appellant in the Craighead Chancery Court and was granted custody of Ramola Ann. In the meantime appellees kept and cared for the child for a period of approximately 33 months. After her divorce from appellant, Norma was married to Leon McHaney and took the child to her new home in Republic, Missouri. Appellant served in the armed forces from April, 1945, until October, 1946, and remarried in December, 1946. He and his present wife have two children of the ages of 2½ years and one year, respectively.

Norma was killed in an automobile accident in December, 1949, when appellees, with the consent of the child's step-father and in compliance with a previous request made by Norma, again took the child into their home at Nettleton, Arkansas, where she has since lived. Immediately after their marriage in Georgia in December, 1946, appellant and his present wife went to Florida for three or four months and then visited appellant's parents in Craighead County for about three months. They then returned to Douglas, Georgia, where appellant farmed on a share crop basis for two years under the GI farm program of the federal government. In December, 1949, they returned to Florida where appellant worked in the citrus fruit harvest. Appellant learned of Norma's death in the latter part of December, 1949, or the first part of January, 1950.

In the latter part of May, 1950, appellant and his family came to his father's home in Craighead County and later moved to a two-room farmhouse near Needham in Craighead County. After visiting his daughter, Ramola Ann, at appellees' home on several occasions, over

a period of three months, appellant demanded and appellees refused to surrender custody of the child. Appellant instituted this proceeding on September 9, 1950.

Appellees, Earl Newcom and wife, are 52 and 48 years old, respectively, and in apparent good health. They own their home at Nettleton where Mr. Newcom is employed as a carpenter. It is undisputed and admitted by appellant that appellees are of good character and have furnished a good home for the child. The child regularly attends school and Sunday School, is very happy in her present environment and strong ties of affection exist between the child and her grandparents.

The evidence is in dispute as to whether appellant. supported and visited the child after placing her with appellees in 1942. He admitted that he saw the child only one time from the date of Norma's remarriage in 1944 until May, 1950, and the evidence is in dispute as to the frequency of his visits while the child was left with appellees from 1942 to 1944. Appellant testified in general terms that he gave money and clothes to appellees for the child's support prior to his induction into military service in 1945, while appellees denied that any substantial support was given or offered by appellant during this time. In explaining his failure to make an allotment for support of the child while in the armed forces, appellant stated that the child's mother told him that the child's step-father, who was also in the service, had made an allotment for the child, but this was denied by appellees. The evidence as a whole fails to show any regular or substantial contributions by appellant toward the support of his child after he surrendered custody to appellees in 1942.

Appellant testified that he had no intention of remaining in Arkansas, but planned to return to Georgia regardless of whether he was given custody of his child. His testimony relative to his present and past earnings and his plans for the future was vague, indefinite and conflicting. He first stated that he had a house rented near Douglas, Georgia, "for another year". He could not remember whether it had four or five rooms but had

inspected it in May before coming to Arkansas. He later stated that it was a farmhouse and that he could get as much land as he wanted with the place up to one hundred acres. He finally admitted on cross-examination that he had not actually closed a deal for the place. In this connection appellant's wife testified that before they left Georgia a neighbor told them of a place they could rent on a share crop basis; that there would be "over four acres" and that appellant would have two acres of tobacco. On the various trips from Georgia and Florida appellant and his family traveled in their pick-up truck which he stated was either a 1941 or 1946 model. They brought part of their household furniture to Arkansas in the truck and left part of it in Florida.

In contending that the chancellor erred in refusing to grant him custody of his child, appellant relies on the recent case of *Brown* v. *Brown,* 218 Ark. 624, 238 S. W. 2d 482. In that case we restated the general rule to the effect that upon the death of a parent who has been given custody of a child the right to such custody ordinarily devolves upon the surviving parent unless such survivor is unfit or has by his conduct forfeited such preferred right or the best interests of the child would otherwise require. In that case the father was regularly employed at a substantial salary, maintained an established home, regularly visited the child during the time that it was in the custody of the aunt and uncle and had been given custody of his two other children. We held that the father had not forfeited his preferred right to custody and that it was for the best interest of the child that she be with her brother and sister in the custody of the father. In *Johnston* v. *Lowery,* 181 Ark. 284, 25 S. W. 2d 436 the husband permitted the wife to have control of the child from the time of separation until the wife's death five years later. In refusing to grant the husband custody as against the child's aunt, who had had the care and custody of the child the greater portion of the time during the separation of the parents, the court said: "The law recognizes the preferential rights of parents to their children over relatives and strangers, and where not

detrimental to the welfare of the children, they are paramount, and will be respected, unless special circumstances demand that such rights be ignored. *Herbert* v. *Herbert,* 176 Ark. 858, 4 S. W. 2d 513; *Loewe* v. *Shook,* 171 Ark. 475, 284 S. W. 726.

"The courts will not always, however, award the custody of an infant to the father, but, in the exercise of a sound discretion, will look into the peculiar circumstances of the case, and act as the welfare of the child appears to require considering primarily three things: '(1) Respect for parental affection, (2) Interest of humanity generally, (3) The infant's own best interest.' "

The position of appellant is similar to, but less favorable than, that of the father in the early case of *Verser* v. *Ford, et al.,* 37 Ark. 27, where the court said: "The child was placed where she is by the father's assent, and has so remained. By his assent ties have been woven between the grand-mother and grand-daughter, which he is under strong obligation to respect, and which he ought not wantonly and suddenly to tear asunder. He has shown no urgent necessity for present action, and his appeal to the Circuit Court for aid was not such as to enlist in most hearts any very strong sympathy." See, also, *Washaw* v. *Gimble,* 50 Ark. 351, 7 S. W. 389; *Coulter* v. *Sypert,* 78 Ark. 193, 95 S. W. 457; *Kirk* v. *Jones,* 178 Ark. 583, 12 S. W. 2d 879.

The principles of law applicable in cases of this nature are well settled. The difficulty lies in the application of these settled rules to the different factual situations that arise in each case. In the nine years that have elapsed since appellant voluntarily placed his child in the care and custody of appellees his attitude of affection and solicitude toward her has been something less than laudable. He has allowed strong ties of love and affection to grow up between the child and appellees, who are furnishing an established home and proper training for the child. He now proposes to suddenly sever this happy relationship and take the child to another state and an uncertain environment. The child is a ward of the chancery court. In exercising that discretion which the

law places upon trial courts, the chancellor had the parties before him and was in a favored position to observe the demeanor of the witnesses and properly weigh the testimony. In the course of the cross-examination of appellant it became necessary for the chancellor on two different occasions to reprimand him for using profanity.

Under all the facts and circumstances disclosed by the evidence, the chancellor correctly concluded that it would be best for the permanent welfare of the child that custody should remain at present with the appellees. This conclusion does not, of course, preclude appellant from renewing his application for custody when, and if, new circumstances arise which would warrant a different result.

Affirmed.