Michael W. LOVELACE *v.* OFFICE OF CHILD SUPPORT
ENFORCEMENT

CA 97-65                                    955 S.W.2d 915

Court of Appeals of Arkansas
Division III
Opinion delivered December 3, 1997

*Appellant,* pro se.

*Juliane Henderson,* for appellee.

ANDREE LAYTON ROAF, Judge. Appellant Michael Lovelace was found to be the father of a child who had reached majority, and was ordered to pay three years of back child support. He appeals *pro se* and challenges both the amount of the judgment and the weekly payment amount ordered. We affirm.

On July 17, 1996, this case was heard by the chancellor to determine paternity and establish support for a child who had reached majority at the time of the hearing. Lovelace also represented himself before the trial court. The DNA test established a 99.93% probability of paternity and the court, based on the mother's testimony and the paternity test results, found Lovelace to be the father of the child. Lovelace did not contest paternity.

At the hearing, the appellee, Office of Child Support Enforcement (OCSE), presented the testimony of a representative who testified as to the back support owed by Lovelace and his current earnings. She testified that his average weekly take-home pay was $348.04 (based upon Employment Security Division records) and that the arrearages dating back three years prior to the

child's eighteenth ·birthday totaled. $8214. Again, Lovelace made no objections to the testimony and asked no questions of the representative.

Lovelace presented no evidence of his own. The chancellor determined that, since the child was no longer a minor, there was no need to discuss or establish visitation or custody. The court then awarded judgment for $8214, without objection by Lovelace. However, when the court stated that the weekly payment amount would be $64, based on Lovelace's current earnings and the child-support chart, Lovelace stated, "I can't pay it." Lovelace argued that $64 per week was too much and that it would create a hardship because he had four children at home. He stated that he could afford $50 every two weeks. The attorney for OCSE stated that they would not be opposed to a downward deviation from the support chart since the judgment was to reimburse the State. The court, noting that Lovelace had stated that he could pay $50 biweekly (or $25 weekly), said that Lovelace would be required to pay $40 weekly. She reasoned that $25 per week was the chart minimum and that amount was indicated when the payor was unemployed. The court also ordered Lovelace to reimburse OCSE for the cost of the paternity testing and to pay the wage assignment fee of $24.

On appeal, Lovelace argues that the trial court should be reversed because: (1) no affidavit of financial means was introduced for him and his net income was miscalculated; (2) undue hardships were created on his other dependents due to the trial court's failure to consider those dependents; and (3) no AFDC payment history was introduced to prove the back support which appellant was charged with reimbursing.

Because Lovelace only mentioned one of his arguments (point 2) below, this court is precluded from addressing the other two arguments on appeal. It is well established that this court will not reverse on an issue not presented to the trial court. *Arkansas Office of Child Support v. House*, 320 Ark. 423, 897 S.W.2d 565 (1995); *Hubbard v. Shores Group, Inc.*, 313 Ark. 498, 855 S.W.2d 924 (1993). The court will not consider arguments raised for the first time on appeal or where a ruling from the trial court has not been obtained. *Mobley v. Harmon*, 313 Ark. 361, 854 S.W.2d 348 (1993).

■ With regard to Lovelace's second point, whether or not the trial court considered the hardship on his children living at home in establishing the weekly payment, the applicable standard of review is abuse of discretion. The amount of child support lies within the sound discretion of the chancellor, and her finding will not be disturbed on appeal, absent a showing that she abused her discretion. *Scroggins v. Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990); *Creson v. Creson*, 53 Ark. App. 41, 917 S.W.2d 553 (1996).

■ ■ Reference to the child-support chart is mandatory where there is a current duty to support, and the chart itself establishes a rebuttable presumption of the appropriate amount which can only be explained away by express findings stating why the chart amount is unjust or inappropriate. *See Black v. Black*, 306 Ark. 209, 214, 812 S.W.2d 480 (1991). Likewise, in a case such as this where there is no current duty to support due to the child's reaching majority, Arkansas Code Annotated § 9-14-235 (Supp. 1995) states that:

> [T]he obligor shall continue to pay an amount . . . to be determined by a court based on the application of guidelines for child support under the family support chart, until such time as the child support arrearage or judgment has been satisfied.

The chancellor, in her discretion, is not entirely precluded from adjusting the amount as deemed warranted under the facts of a particular case, and this court will not disturb the chancellor's decision to do so absent an abuse of discretion. *Jones v. Jones*, 43 Ark. App. 7, 12, 858 S.W.2d 130 (1993).

■ In the present case, the chancellor clearly indicated that she was considering the hardship on Lovelace's other children in her determination of the amount of his scheduled payments. In addition, she did not order Lovelace to pay the amount prescribed by the child-support chart, but rather departed downward as Lovelace requested. The mere fact that she did not reduce the payment to the amount he requested cannot be said to amount to an abuse of discretion.

Affirmed.

ROBBINS, C.J., and MEADS, J., agree.