Martha S. DAVIS  *v.*
OFFICE of CHILD SUPPORT ENFORCEMENT

CA 98-1343                                          5 S.W.3d 58

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered November 17, 1999
[Petition for rehearing denied December 22, 1999.]

*Legal Services of Northeast Arkansas*, by: *Dawn Bohanan*, for appellant.

*Linda O. Bowlin*, for appellee.

JUDITH ROGERS, Judge. Appellant, Martha S. Davis, was ordered by the Randolph County Chancery Court to pay child support in the amount of $70.00 a month. For reversal, appellant contends that the Chancery Court erred in finding that Supplemental Security Income [hereinafter "SSI"] is "income" from which child support can be assessed. We have found no cases specifically mentioning the issue of Supplemental Security Income, but in examining the law as it relates to "income" for purposes of setting child support in the State of Arkansas, we now conclude that SSI is "income," and we affirm.

On April 10, 1989, the Chancery Court of Randolph County entered its Decree of Divorce awarding custody of the two minor children of appellant, Martha S. Davis, to the children's father, Randy I. Davis. The parties reached a settlement that did not require the appellant to pay child support because she was unemployed. The trial court incorporated this settlement agreement in its decree and did not direct the appellant to pay child support.

Randy Davis assigned all rights to child support to the appellee, Office of Child Support Enforcement, who, in April 1998, filed an action against appellant in the Chancery Court of Ran-

dolph County to set child support. The appellant filed an answer alleging that she was disabled and that her only source of income was Supplemental Security Income in the amount of $484.00 a month. At trial appellant testified that, in exchange for $400.00 a month in rent, her sister allows the appellant to live with her and supplies items such as groceries and cigarettes. Appellant testified that she smoked "a pack a day, maybe." The remainder of appellant's income each month was used to purchase prescription medication to treat her disability.

On August 4, 1998, the Chancery Court of Randolph County found in favor of the appellee, and ordered the appellant to pay child support. Specifically the Court found:

> 4. That the Court was presented with the issue whether or not an individual whose sole source of income is Supplemental Security Income (SSI) could be ordered to pay child support. That the Court finds that the Defendant owes a continuing duty of support to the aforementioned children; Defendant currently receives Supplemental Security Income in the amount of $494.00 per month; and utilizing this income she smokes "about one pack of cigarettes a day maybe", and considering this and all other evidence before me, the Defendant is hereby directed to pay the sum of $70.00 per month as a reasonable amount of support for the Defendant to pay beginning Friday, August 7, 1998. Deviation from the chart is supported by evidence presented to the Court and so noted on the record pursuant to Ark. Code Ann. § 9-12-312.

■ The amount of child support a chancery court awards lies within the sound discretion of the court and will not be disturbed on appeal absent an abuse of discretion. *Schumacher v. Schumacher*, 66 Ark. App. 9, 986 S.W.2d 883 (1999). In setting the amount of family support, the chancellor must refer to the child-support chart. *Id.* Reference to the family-support chart is mandatory. *Woodson v. Johnson*, 63 Ark. App. 192, 975 S.W.2d 880 (1998); *Thompson v. Thompson*, 63 Ark. App. 89, 974 S.W.2d 494 (1998); *Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998). *See also* Ark. Code Ann. § 9-14-106 (Repl. 1998). The family-support chart creates a rebuttable presumption that the amount of child support set forth therein is the correct amount of child support to be awarded. That amount can be disregarded only if the chancery court makes express written findings or specific findings on the record that application of the support chart is unjust or inappropri-

ate. *Woodson v. Johnson, supra* and *Anderson v. Anderson, supra.* Relevant factors to be considered by the court in determining whether to deviate from the amount of child support set by the family-support chart are set forth in Administrative Order No. 10: Arkansas Child Support Guidelines, 329 Ark. appx. 668 (1997).[1] *Schumacher v. Schumacher,* 66 Ark. App. 9, 986 S.W.2d 883 (March 17, 1999). In the matter at hand, the appellant does not contest the deviation from the chart.

There is no evidence in the abstracted record to demonstrate the financial needs of the children or the custodial parent. This is very troublesome to the dissent. However, the appellant does not question the factual findings of the trial court. The only issue on appeal is whether or not SSI is "income" for purposes of paying child support. Thus, the sufficiency of the evidence to support the award of child support in this particular case is immaterial to this appeal. We will not violate the long-standing rules of this court mandating that we address only those issues properly presented for our review in order to reach what the dissent views as a less tragic ending to this case. We have been presented with a single question of law, that is whether SSI benefits can be considered "income" for purposes of setting child-support obligations. We will reach no other issue.

Furthermore, even if the sufficiency of the evidence had been questioned by appellant, it is her responsibility to bring up a record sufficient to demonstrate error. *Clowney v. Gill,* 326 Ark. 253, 929 S.W.2d 720 (1996); *Hamilton v. Jeffrey Stone Co.,* 25 Ark. App. 66, 754 S.W.2d 850 (1988). Appellant could have requested that the trial court make specific findings of fact pursuant to Ark. R. Civ. P. 52 concerning the financial needs of the children, but she did not; therefore, she has waived that issue. *See Smith v. Quality Ford, Inc.,* 324 Ark. 272, 276, 920 S.W.2d 497 (1996) ("[Rule 52] retains prior state law by which the failure of a party to request special findings of fact amounted to a waiver of that right. Reporter's Notes (as modified by the Court) to Rule 52, n. 1 [citing *Anderson v. West Bend Co.,* 240 Ark. 519, 400 S.W.2d 495 (1966)].") In the absence of evidence to the contrary, we will assume that the chancery court correctly applied the law. *See*

---

[1] Hereinafter we will refer to the Arkansas Child Support Guidelines as "guidelines," "child support guidelines," or "per curiam."

*Brouwer v. Stephens*, 7 Ark. App. 87, 644 S.W.2d 329 (1983). There-fore, we limit our discussion to the question of law properly presented to us and do not question the findings of fact below.

■ The child-support guidelines of the State of Arkansas define "income" as "any form of payment, periodic or otherwise, due to an individual, regardless of source. . . ." *Child Support Guidelines*, 329 Ark. appx. at 669; *see also* Ark. Code Ann. § 9-14-201(7) (1998 Repl.). Thus, under the plain language of the statute, the regular SSI payments received by appellant are "income." This conclusion is supported by this court's precedent as discussed in the following cases. In *Belue v. Belue*, 38 Ark. App. 81, 828 S.W.2d 855 (1992), this court held that veteran's disability benefits are properly considered income. Also, in *Kimbrell v. Kimbrell*, 47 Ark. App. 56, 884 S.W.2d 268 (1994), this court held that child support was properly assessed against an individual whose sole source of income was $435.00 per month in Social Security Disability benefits. "The language . . . contained in the *per curiam* shows the committee's intent to expand, not restrict, the sources of funds to be considered in setting child support." *Belue v. Belue*, 38 Ark. App. 81, 828 S.W.2d 855 (1992). The court's reasoning in *Kimbrell* is applicable here: "Despite appellant's disability, [s]he has a source of income and thus is not wholly without the means to pay support." *Kimbrell v. Kimbrell*, 47 Ark. App. 56, 884 S.W.2d 268 (1994). "[E]ach parent is responsible for bringing the child into this world and each, where financially able, has an obligation to render assistance." *Id.*, quoting *Petty v. Petty*, 252 Ark. 1032, 482 S.W.2d 119 (1972). Therefore, we affirm the finding of the chancery court that SSI benefits are income from which child support can be assessed under Arkansas law.

■ The question remains as to whether federal law preempts Arkansas courts from assessing child support against SSI benefits. The United States Supreme Court has stated explicitly the standard that is to be used in determining whether a federal law preempts state law in matters of domestic relations:

> We have consistently recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593-594, 10 S.Ct. 850, 852-853, 34 L.Ed. 500 (1890); *see Hisquierdo, supra*, 439 U.S., at 581, 99 S.Ct., at 808; *McCarty, supra*, 453 U.S., at 220, 101 S.Ct., at 2735. "On

the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be pre-empted." *Hisquierdo, supra,* 439 U.S., at 581, 99 S.Ct., at 808, *quoting Wetmore v. Markoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 175, 49 L.Ed. 390 (1904). Before a state law governing domestic relations will be overridden, it "must do 'major damage' to 'clear and substantial' federal interests." *Hisquierdo, supra,* 439 U.S., at 581, 99 S.Ct., at 808, *quoting United States v. Yazell,* 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966).

*Rose v. Rose,* 481 U.S. 619, 107 S.Ct. 2029 (1987). The question thus becomes whether Congress has "positively required by direct enactment" that the Arkansas law, which includes SSI benefits within its definition of "income" for purposes of setting child support, be preempted and whether the Arkansas law does "major damage to clear and substantial federal interests." *Id.* Absent such a showing, Arkansas law will stand.

Other states that have addressed this issue are divided. Minnesota, New York, Tennessee, and Wisconsin have held that federal law preempts states from ordering that SSI recipients pay child support. *See Becker Co. Human Servs., re Becker Co. Foster Care v. Peppel,* 493 N.W.2d 573 (Minn. Ct. App. 1992); *Tennessee Dept. of Human Servs. ex rel Young v. Young,* 802 S.W.2d 594 (Tenn. 1990); *Langlois v. Langlois,* 441 N.W.2d 286 (Wisc. Ct. App. 1989); *Moore v. Sharp,* 532 N.Y.S.2d 811 (N.Y. App. Div. 1988).

Indiana and Iowa have state guidelines that prohibit the assessment of child support against income from public assistance. These states each define public assistance benefits to include SSI. *See In re Marriage of Benson,* 495 N.W.2d 777 (Iowa Ct. App. 1992); *Esteb v. Enright,* 563 N.E.2d 139 (Ind. Ct. App. 1990).

We join with Alabama, Kentucky, and Pennsylvania in holding that an individual whose sole source of income is SSI can be ordered to pay child support. *See Commonwealth of Ky., ex rel Morris v. Morris,* 984 S.W.2d 840 (Ky. 1998); *Whitmore v. Kenny,* 626 A.2d 1180 (Pa. Super. Ct. 1993); *Ex parte Griggs,* 435 So.2d 103 (Ala. Civ. App. 1983).

"The SSI program provides a subsistence allowance, under federal standards, to the Nation's needy aged, blind, and disabled."

*Swcheiker v. Wilson*, 450 U.S. 221, 101 S. Ct. 1074 (1981). "This program was intended to assist those who cannot work because of age, blindness, or disability, by setting a Federal guaranteed minimum income level for aged, blind, and disabled persons." *Id.* (quoting S. Rep. No. 92-1230, pp. 4, 12 (1972)). The protections against "execution, levy, attachment, garnishment, or other legal process" provided for social security disability benefits in 42 U.S.C. § 407(a) are extended to SSI benefits in 42 U.S.C. § 1383(d)(1).

"The patent intent of [section 407] is to prohibit creditors from asserting claims upon SSI funds that take precedence over the SSI recipient's right to such funds." *Morris, supra.* However, "alimony and child support are not a debt in the same sense as a debt owed to a creditor. . . . They are a duty of a higher obligation." *Griggs, supra.*

■ Applying the standard articulated by the United States Supreme Court in *Rose*, we find that the State is not preempted from ordering that a parent whose sole source of income is SSI be subject to an order to pay child support. Although SSI is protected by section 407 against garnishment, levy, and other legal process, Congress created a limited waiver of this sovereign immunity in 42 U.S.C. § 659(a), which makes government benefits that are based upon remuneration for employment subject to child-support enforcement measures regardless of the protections of section 407. There is some ambiguity as to whether section 659 applies to SSI benefits or not and even as to whether the section 407 prohibition against garnishment and other types of legal process is applicable to child support. *See Rose, supra.* However, given this ambiguity in the language and the traditional deference given to the states in matters of family law, it cannot be said that Congress has acted in such a positive and direct manner as to preempt state action. Therefore, we must consider whether or not allowing state courts to assess child support against SSI benefits will do "major damage to clear and substantial federal interests." *Rose, supra.*

■ As stated above, the purpose of the SSI program is to guarantee to individuals a minimum level of subsistence income. *Swcheiker, supra.* The Arkansas law does not do major damage to this interest because the guidelines grant chancellors a measure of discretion in assessing support. *See Child Support Guidelines*, 329 Ark. appx. at 669. The Chancellor has the discretion to consider all

of the evidence presented to the court in establishing child support and may deviate from the chart where it would be unjust not to do so.

> It shall be sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to the Family Support Chart is correct, if the court enters in the case a specific written finding within the Order that the amount so calculated, after consideration of all relevant factors, including the best interests of the child, is unjust or inappropriate.

*Id.*

It is the province of the trial court to make these calculations, and we will not disturb its findings absent an abuse of discretion. There is no major damage done to the federal interest in providing a subsistence income to blind, aged and disabled individuals when the trial court is given discretion to balance competing interests, such as those of a parent and her minor children. We have confidence in the abilities of the chancellors of this state to balance the needs of noncustodial parents on limited incomes with those of their children. They have done so until now, and we have no cause to believe they will suddenly lose their ability to weigh the equities in matters of child support simply because the parent is on SSI as opposed to social security disability. There is no "major damage" done to the federal interest of providing a means of subsistence to blind, aged, and disabled individuals.

In the instant case, the chancellor considered the low level of the appellant's income along with her expenses and habits. According to the chancellor's interpretation of the evidence before him, the appellant was financially capable of paying $70.00 per month in child support, even though her only means of income is SSI. The chancellor recognized that this is a downward deviation from the presumptive amount of support called for in the guidelines; however, he noted that the circumstances warranted deviation. As such, the federal interest in providing a means of subsistence was given due consideration in this matter without sacrificing the state's interest in seeing that all parents support their minor children. As the dissent points out, we do not have before us evidence of all the financial matters involved in this case. We cannot assume based upon the limited evidence presented to us that the chancellor acted inequitably. Certainly, the appellant has a very

limited income; however, without more information, we cannot simply assume that the $70.00 per month awarded by the chancellor toward the support of appellant's children is not essential for their own subsistence.

We note that the dissent is concerned that the majority opinion violates the underlying federal public policy to provide a subsistence amount for its recipients. There is, however, an equally important public policy consideration that parents are responsible for the basic needs of their children. *Cf. Kimbrell* and *Petty, supra.* There is an obvious tension between these two concerns, and that is why discretion is given to the chancellor, who is in the superior position to observe witnesses and evidence, in child-support cases. *See Child Support Guidelines, supra; see also Russell v. Russell,* 275 Ark. 193, 628 S.W.2d 315 (1982); *Lagasse v. Lagasse,* 234 Ark. 734, 354 S.W.2d 274 (1962); *Griffen v. Newcom,* 219 Ark. 146, 240 S.W.2d 648 (1951). Absent a more direct or explicit pronouncement from Congress that the federal policy of protecting individuals from poverty preempts Arkansas' policy of protecting its children from the same horror, we find that Arkansas law is not preempted. Supplemental Security Income is "income" that can be considered in awarding child support.

Affirmed.

HART, JENNINGS, and STROUD, JJ., agree.

CRABTREE J.,concurs.

GRIFFEN, J., dissents.

TERRY CRABTREE, Judge, concurring. I concur in the result of this case but not without some pause to consider its full implications. In my opinion, the decision we address in this case should be decided on a case-by-case basis. The chancellor is in the best position to determine the needs of the parties and what income is available for the support of the minor children. While I agree with Judge Griffen that people with disabilities should enjoy at least a minimum standard of living, I also believe that each person who brings a child into this world should bear some responsibility for the child's upbringing. It is not enough to say that funds are not available to support a child; sacrifice is required by all who are

parents. In my opinion, it is but a small sacrifice to give up smoking to support, in some small way, our own children.

WENDELL L. GRIFFEN, Judge, dissenting. I agree that the broad definition of "income" found at Administrative Order No. 10 by our supreme court authorizes extending the child-support obligation to SSI benefits. I also agree that federal law does not expressly prohibit child-support payments from being assessed against SSI benefits. However, I dissent for three reasons. First, the chancellor's order directing appellant to pay child support from her SSI benefits, affirmed by today's decision, damages clear and substantial federal interests and directly contravenes the congressional intent that underlies the SSI program. Second, the majority fails to discern the different treatment that federal law accords benefits intended to serve as income replacement, from those benefits intended to secure a guaranteed subsistence income. Finally, the majority opinion affirms a chancellor's order that sets child support without proof about the children's needs, and unfairly attempts to shift the burden regarding proof of the children's needs.

Rather than turning solely on the issue of whether SSI benefits are "income" from which child support may be assessed, this appeal involves the broader issue of whether requiring an SSI recipient to pay child support from her benefits does major damage to clear and substantial federal interests and directly contravenes the intent of Congress in enacting the Supplemental Security Income Program. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979). Unlike the majority, I conclude that assessing child support against SSI benefits both directly contravenes the congressional intent that underlies the SSI program and does major damage to the substantial federal interest in providing a national guaranteed minimum income level to poor persons who are blind, elderly, or disabled. Therefore, I would reverse the chancellor's order.

The majority states that the resolution of the issue in this case is determined by "whether Congress has 'positively required by direct enactment' that Arkansas law, which included SSI benefits within its definition of 'income' for purposes of setting child support, be pre-empted . . . ." (citing *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979)). The majority concludes that because the federal statutes governing SSI are "ambiguous" with regard to whether SSI benefits are immune from garnishment and other legal process

applicable for collecting child support, and because the Supreme Court has traditionally given deference to the states in matters of family law, "it cannot be said that Congress has acted in such a positive and direct manner as to preempt state action."

However, this approach ignores that the Congress may, absent a positive direct enactment, implicitly intend to supercede state law in a given area. *See Wisconsin Public Intervenor v. Morther*, 502 U.S. 597 (1991). Congress may implicitly intend to supercede state law where the goals to be obtained by a federal program and the obligations imposed reveal a purpose to preclude state authority. *Id.* at 605 (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947)). Congress may also implicitly intend to preempt state law when that law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wisconsin Public Intervenor v. Morther, supra,* at 605 (quoting *Hines v. Davidowitz*, 312 U.S. 52 (1941)).

Thus, merely determining that Congress has not positively required by direct enactment that state law be preempted is not dispositive. The next step is to examine the congressional intent that underlies the SSI program, and determine whether the state law directly and adversely interferes with the objective of the federal program. The final step is to determine whether the state law does major damage to clear and substantial federal interests.

As the Supreme Court observed in *Schweiker v. Wilson*, 450 U.S. 221 (1981), SSI benefits were intended by Congress to help impoverished blind, aged, or disabled persons attain a guaranteed minimum income level. SSI benefits are immune from garnishment, levy, execution, or other legal process. *See* 42 U.S.C. §§ 407(a) and 1383(d)(1). Moreover, SSI benefits are not subject to federal taxation. 26 U.S.C. § 86(d)(1). Congress plainly intended that SSI beneficiaries be accorded special treatment. While no federal statute expressly dictates that SSI benefits are beyond the reach of an order to pay child support, it is self-evident that the diminution of those benefits by deducting child-support payments will directly and adversely impact the federal objective in providing a guaranteed minimum income for poor persons who are aged, blind, or disabled.

The majority states that Arkansas law does not do major damage to the federal interest in providing a guaranteed minimum income because Arkansas's child-support guidelines grant chancellors some discretion in assessing support. The majority is mistaken when it bottoms today's decision on the exercise of a chancellor's discretion. The fact that chancellors have discretion to deviate from the child-support guidelines does not resolve the threshold question of whether imposing those child-support guidelines undermine federal objectives in enacting the SSI benefit scheme. After all, if the federally guaranteed floor is uprooted by the exercise of that discretion then the federal interest in laying the floor has sustained major damage.

The decision by the Tennessee Supreme Court in *Tennessee Department of Human Services, ex rel. Young v. Young*, 802 S.W.2d 594 (Tenn. 1990), is a sound approach to the problem presented by this appeal, *i.e.*, whether SSI benefits should be subject to child-support orders, because it recognizes that benefits that are in the nature of replacement for earning loss (such as disability benefits and pension benefits) are materially different from welfare benefits aimed at providing recipients with subsistence income. Social Security Disability recipients, Veteran's Administration disability recipients, workers' compensation disability recipients, and recipients of unemployment compensation benefits receive benefits based on their income levels before disability or unemployment. Those benefits are properly deemed income for purposes of the child-support obligation. But as the Tennessee Supreme Court observed in *Young*:

> SSI payments are a form of public assistance and have nothing to do with earnings a person may have had. It is essentially a safety net program, to protect indigent persons who are otherwise qualified for the program. [T]he amount of money to which an SSI recipient is entitled is contingent upon *how little* a person makes or has made rather than how much. An eligible SSI recipient's benefits are the amount necessary to raise the recipient's income to the prescribed minimum level. By contrast, the amount of a Social Security Disability recipient's benefits is keyed to how much that person has paid into the Social Security system over time.

*Id.* at 597 (emphasis added).

The majority patently fails to recognize this vital distinction. Thus, the result affirmed today treats the subsistence stipend that the federal government provides aged, blind, or disabled poor people the same way that Social Security disability benefits, Veteran's Administration disability benefits, workers' compensation disability benefits, and unemployment compensation benefits are treated as far as child-support orders are concerned. But Supplemental Security Income benefits are not and have never been income replacement benefits. People receive SSI because the federal government intends to provide a national floor below which no aged, blind, or disabled poor person will fall, not because they were disabled in the course of their employment (Veteran's Administration and workers' compensation disability), or because they are disabled from gainful employment done in the past (Social Security disability), or because they are unemployed after having worked in the past (unemployment compensation benefits).

The majority is simply mistaken in asserting that "[a]lthough SSI is protected by [42 U.S.C. §] 407 against garnishment, levy, and other legal process, Congress created a limited waiver of this sovereign immunity in 42 U.S.C. § 659(a) which makes government benefits which are based upon remuneration for employment subject to child-support enforcement measures, regardless of the protections of section 407." If SSI benefits are not based upon remuneration for employment — a reality that the majority neither denies nor challenges — it is simply wrong to assert that a statute applicable to benefits based upon remuneration for employment authorizes the result affirmed today.[1]

---

[1] 42 U.S.C. § 659(a) states:

Consent to support enforcement. Notwithstanding any other provision of law (including section 207 of this Act [42 USCS § 407] and section 5301 of title 38. United States Code), effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the Armed Forces of the United States, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to withholding in accordance with State law enacted pursuant to subsections (a)(1) and (b) of section 466 [42 USCS § 666(a)(1), (b) and regulations of the Secretary under such subsections, and to any other legal process brought, by a State agency administering a program under a State plan approved under this part [42 USCS §§ 651 *et seq.*] or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony.

The Tennessee Supreme Court also correctly reasoned that it would violate the explicit intention of Congress in enacting the Supplemental Security Income Program to require an SSI recipient to pay child support from subsistence benefits.

> Because of the nature of the program's mission, SSI recipients have a very low income level and little, if any, opportunity to raise that level because of their age or disability. Subtracting child support payments, in the variable amounts set by state trial judges, from this already low figure would reduce theindividual recipient's income below the guaranteed minimum level for aged, blind, and disabled persons.

*Id.*, 802 S.W.2d at 597-98. If every chancellor in Arkansas can order child support paid from SSI benefits, the federally "guaranteed minimum" would be neither guaranteed nor a minimum subsistence benefit for aged, disabled, and blind poor people. Moreover, if each state can order child support paid from SSI benefits, the notion of a federally guaranteed minimum subsistence for the indigent, aged, blind, and disabled is made a joke by judges who merely pay lip-service to federal preemption. There is no hope for uniformity in the amount of SSI benefits. What a recipient may actually use to subsist varies depending on the judicial discretion of family court judges throughout the nation.

While I dissent in large part because I believe today's holding conflicts with federal law, I also dissent because of the impact today's decision will have on our state law. The record before us suffers from the absence of information about the financial situation of the two children who would benefit from the child-support payments ordered by the chancellor. We are provided no information about their financial needs, the financial means of the custodial parent, or whether the children face any special situation that impacts on the child-support issue. In other words, we do not know how $70 a month will affect the ability of the custodial parent to provide for the children. I question the propriety of setting a precedent for affirming the chancellor's award of child support absent information about the needs of the children to be supported.

The abstracted record includes the Petition to Set Child Support that the Office of Child Support Enforcement (OCSE) filed in the chancery court. The petition asserted that Randy I. Davis, father and physical custodian of the minor children (James R. Davis,

born October 27, 1983, and Jake A. Davis, born February 2, 1986), had assigned all rights to child support to and "has signed Contract and Assignment for Child Support Services or has assigned all rights to collect child support...." The Petition recited that the chancellor had entered a decree of divorce on April 10, 1989, awarding custody to Randy Davis "but did not direct defendant to pay child support." The Petition asserted no facts about the financial situation facing the children, their financial needs, or the ability of the custodial parent to meet those needs. The record is otherwise silent on those crucial factors related to determining child support. The Order of Support entered by the chancellor contains no findings of fact related to these issues. As far as appellate review is concerned, we do not know any of the facts that are essential to determining what child support is needed by these children, let alone whether that support has already been provided by the custodial parent or is being provided by a third party. Thus, we cannot fairly or honestly affirm the chancellor's decision as an appropriate exercise of his discretion. This is particularly important because of the impact of that decision on this impoverished, mentally disabled, and essentially homebound appellant.

Further, the majority opinion attempts to unfairly shift the burden regarding presentation of proof of the children's needs. While the majority accurately cites the holding that an appellant is responsible for bringing up a record sufficient to demonstrate error, see Clowney v. Gill, 326 Ark. 253, 929 S.W.2d 720 (1996), the appellee had the burden of proving the need for the child support that the chancellor ordered paid. After all, the appellee was standing in the shoes of the custodial parent in its claim for child support. Arkansas Code Annotated § 9-14-210(d) (Repl. 1998) states:

> The State of Arkansas is the real party in interest for purposes of establishing paternity and securing repayment of benefits paid and assigned past due support, future support, and costs in actions brought to establish, modify, or enforce an order of support in any of the following circumstances: . . . (2) Whenever a contract and assignment for child support services have been entered into for the establishment or enforcement of a child support obligation for which an automatic assignment under § 9-14-109 is not in effect.

It is beyond argument that the chancellor could not be affirmed in awarding child support on a petition by Randy Davis without some evidence about the financial needs of the children

and the support that Randy Davis or others provided. It is equally plain that had Randy Davis asserted a claim for child support against appellant, he would have been obligated to produce evidence concerning the support needed for the children. The burden of producing that evidence would not have shifted to appellant, either before the chancellor or on appeal, had Randy Davis failed to produce any evidence. Therefore, I do not understand why the missing proof from this record should be blamed on appellant, the noncustodial parent from whom support was being claimed, rather than OCSE, the party responsible for bringing the support petition. How does the OCSE stand in a different position from the custodial parent?

The majority opinion asserts that appellant "does not question the factual findings of the trial court. The only issue on appeal is whether or not SSI is 'income' for purposes of paying child support. Therefore, we limit our discussion to this question of law and do not question the findings of fact below." It is true that the appeal challenges the chancellor's order that appellant pay child support of $70 monthly from her SSI benefits. It is equally true that the chancellor made no factual findings related to the support needs of the children. Given that the record contains no proof about their support needs, I understand why no such factual findings were made. That does not explain how or why the majority believes appellant was responsible for producing the proof needed for such findings in order to challenge the chancellor's order. It also does not explain how the majority determined that it is equitable, on *de novo* review, to require this appellant to pay almost one-seventh of her monthly subsistence as child support when no one has proved a thing about the needs of the children to be supported.

The record plainly shows that appellant has a monthly income of $494 from SSI benefits. Appellant suffers from paranoid schizophrenia, is homebound, and pays $400 each month to her sister toward her rent, groceries, and other living expenses. It is undisputed that the rest of appellant's monthly SSI allowance is spent on medication for her schizophrenia, and that appellant smokes a pack of cigarettes a day. I do not understand how any of this evidence, or all of it for that matter, proves anything about the financial needs of the minor children. Appellant proved her entitlement to SSI benefits; she was not obligated to prove how much support the children needed.

Moreover, it is unwise and unfair to pose the problem presented in this appeal in terms of whether SSI beneficiaries have a moral obligation to support their children. I agree that poor parents are not exempt from the obligation to feed, clothe, and otherwise provide the support their children require. Every parent has a moral obligation to support her children. If this appellant had custody of her children she would no doubt qualify for additional government assistance for their needs. If the custodial parent is impoverished then he would qualify for that additional assistance. But appellant, the non-custodial mentally disabled and undisputably impoverished parent, is living on a federal subsistence stipend aimed at guaranteeing her a minimum living allowance. The question is whether money that the federal government has explicitly dedicated to guarantee a subsistence floor for her situation (aged, blind, or disabled poor people) can be diverted for child-support purposes without uprooting the floor. By disregarding the congressional intent to provide the destitute and mentally disabled federal subsistence benefits, and by ordering the appellant and others similarly situated to pay child support from those subsistence benefits, the court effectively destroys the federal effort to provide the appellant with a guaranteed minimum income.

Finally, it is a shame that the Office of Child Support Enforcement chose to treat this mentally disabled mother who subsists on less than $500 a month like a "deadbeat dad." The decision to do so, coupled with the chancellor's order and the result announced today, prove that Horace Walpole, the fourth Earl of Orford, was right more than two hundred years ago when he said, "This world is a comedy to those that think, a tragedy to those that feel."[2] The result affirmed today is anything but comical. I respectfully dissent from the tragedy that it will produce for this appellant.

---

[2] Letter to Anne, Countess of Upper Ossory, August 16, 1776.