OFFICE OF CHILD SUPPORT ENFORCEMENT *v.*
Shaun PITTMAN

CA 99-1297 20 S.W.3d 426

Court of Appeals of Arkansas
Division II
Opinion delivered June 28, 2000

*Amy L. Ford*, for appellant.

No response.

OLLY NEAL, Judge. Office of Child Support Enforcement has appealed from an order of the Lee County Chancery Court modifying appellee Shaun Pittman's child-support obligation for Shamara Pittman, who was born out of wedlock to Sonya Pointer and appellee on July 30, 1996. We agree with appellant that the chancellor erred in determining appellee's net income and the amount of child support required by the family-support chart in reference to that income. Accordingly, we reverse and remand.

In June 1997, appellee was adjudged to be Shamara's father and was ordered to pay child support in the amount of $95.00 every

two weeks. In September 1998, another child was born out of wedlock to appellee and a different woman, whom appellee married in July 1999. Appellee's support obligation for Shamara was reviewed at a hearing on August 5, 1999. At the hearing, appellee testified that he has a master's degree in business administration and is employed by Coahoma Community College in Mississippi. He stated that he has a second job at a casino, the commute to which requires an hour's drive each way. He said that he is also obligated by a Mississippi court order to pay $700 per month in child support for his four other children. Appellee testified that his wife is working on her master's degree in English education and is not employed during the school year. He said that he is the sole support for his wife, their child, and his wife's son; his wife does not receive any child support from her son's biological father.

At the conclusion of the hearing, the chancellor found appellee's after-tax income to be $4,400 per month. He stated that, from this $4,400, he would deduct $140 for appellee's commuting expenses and the $700 appellee was ordered to pay by the Mississippi court, to arrive at a net income of $3,600 per month. The chancellor also said that, in determining the amount of support required by the family-support chart, he would treat Shamara as one dependent, appellee's wife and his stepchild as one dependent, and appellee's child that was born to his present marriage as one dependent. He said that, based on appellee's net income of $3,600, appellee should pay $972 in support for three dependents and, therefore, he would order appellee to pay one-third of that amount for Shamara. On August 6, 1999, the chancellor entered an order directing appellee to pay $150 every two weeks in child support.

On appeal, appellant makes the following arguments: (1) the chancellor erred in determining appellee's net income by deducting his commuting expenses from his gross pay; (2) the chancellor erred in setting appellee's support obligation for Shamara as one-third of the amount established by the family-support chart for three dependents; and (3) the chancellor erred in granting appellee a credit for his current wife and her son, appellee's step-child.

■■ The amount of child support a chancery court awards lies within the court's sound discretion and will not be disturbed on appeal absent an abuse of discretion. *Davis v. Office of Child Support Enforcement,* 68 Ark. App. 88, 5 S.W.3d 58 (1999). In setting the

amount of support, the chancellor must refer to the family-support chart. *Id.* Reference to this chart is mandatory. *Id.* The family-support chart creates a rebuttable presumption that the amount of child support set forth therein is the correct amount of child support to be awarded and that such amount can be disregarded only if the chancery court makes a specific written finding that application of the support chart is unjust or inappropriate. *Id.*; *In re Administrative Order No. 10: Arkansas Child Support Guidelines, 331 Ark. 581 (1998) (hereinafter "guidelines").*

Before a chancellor can refer to the child-support chart, the payor's income must be determined. *Office of Child Support Enforcement v. Longnecker,* 67 Ark. App. 215, 997 S.W.2d 445 (1999). The guidelines define "income" as follows:

> Income means any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest less proper deductions for:
>
> 1. Federal and state income tax;
>
> 2. Withholding for Social Security (FICA), Medicare, and railroad retirement;
>
> 3. Medical insurance paid for dependant children, and
>
> 4. Presently paid support for other dependents by Court order.

■ Therefore, we agree with appellant that the chancellor erred in deducting appellant's commuting expenses from his after-tax income to arrive at his net income. However, as discussed below, such expenses may be considered by the chancellor in determining whether to deviate from the amount of child support established by the family-support chart.

■ We also agree with appellant that the chancellor erred in treating Shamara as one of three dependents and awarding her one-third of the amount of child support required by the family-support chart for three dependents. This method of determining support was disapproved in *Barnes v. Barnes,* 311 Ark. 287, 843 S.W.2d 835 (1992); *Arkansas Dep't of Human Servs. v. Forte,* 46 Ark. App. 115, 877 S.W.2d 949 (1994); and *Waldon v. Waldon,* 34 Ark. App. 118,

806 S.W.2d 387 (1991). We explained our decision in *Arkansas Department of Human Services v. Forte,* as follows:

> In the case at bar, there was evidence from which the chancellor could have found that appellee contributes to his other children's support. Therefore, we cannot say the chancellor's consideration of these children in setting support is in error. Nevertheless, we must reverse and remand this award to the chancellor because the method the chancellor employed in determining appellee's child support obligation is not appropriate.
>
> It appears that the chancellor applied appellee's income figure of $270.00 to the chart under the column for three dependents, which showed support of $101.00, and then divided that figure by three, to arrive at support for U.T. of $35.00. In *Waldon v. Waldon, supra,* this Court held that the chart should be applied to the child that is before the court and that it is improper for the chancellor to have applied the chart based on three dependents and then divide that amount by three. "The result of applying the chart as the chancellor did here is that the amount of support for the one child was diluted, as the chart is structured so that the amount of support per child decreases in proportion to the number of added dependents." 32 Ark. App. at 123, 806 S.W.2d at 390. Therefore, we must remand this decision to the chancellor with instructions to apply the chart based on the one child that is before it and then, if the chancellor finds this amount unjust or inequitable, to make such adjustments as he considers necessary supported by written findings.

46 Ark. App. at 119, 877 S.W.2d at 951-52.

■ Applying this reasoning to the case before us, we conclude that the chancellor erred in treating Shamara as one of three dependents and in setting her child support at one-third of the amount indicated by the chart for three dependents. As explained below, however, the chancellor may consider the needs of appellee's child from his current marriage, along with appellee's other obligations, in deciding whether it would be equitable to deviate from the amount set by the chart.

The guidelines provide that it is sufficient to rebut the presumption that the amount of child support calculated pursuant to the family-support chart is correct, if the court enters a specific written finding within the order that the amount so calculated, after consideration of all relevant factors, including the best interests of

the child, is unjust or inappropriate. According to the guidelines, relevant factors to be considered by the court in determining whether to deviate from the amount of child support set by the family-support chart shall include food, shelter and utilities, clothing, medical expenses, educational expenses, dental expenses, child care, accustomed standard of living, recreation, insurance, transportation expenses, and other income or assets available to support the child from whatever source. The guidelines also include the following as additional factors that may warrant adjustment to the child-support obligation:

> 1. The procurement and/or maintenance of life insurance, health insurance, dental insurance for the children's benefit;
>
> 2. The provision or payment of necessary medical, dental, optical, psychological or counseling expenses of the children (e.g. orthopedic shoes, glasses, braces, etc.);
>
> 3. The creation or maintenance of a trust fund for the children;
>
> 4. The provision or payment of special education needs or expenses of the child;
>
> 5. The provision or payment of day care for a child;
>
> 6. The extraordinary time spent with the noncustodial parent, or shared or joint custody arrangements; and
>
> 7. The support required and given by a payor for dependent children, even in the absence of a court order.

331 Ark. at 586.

 Therefore, it is clear that, in deciding whether to deviate from the amount of child support set by the family-support chart, the chancellor may consider appellee's support of his child by his present marriage. *See also Lovelace v. Office of Child Support Enforcement,* 59 Ark. App. 235, 955 S.W.2d 915 (1997); *Arkansas Dep't of Human Servs. v. Forte, supra.* He may also consider the fact that appellee is the sole support of his wife and her son, appellee's step-child. In *Green v. Green,* 232 Ark. 868, 341 S.W.2d 41 (1960), the appellee persuaded the chancellor to discontinue his obligation to pay $25 toward his child's educational fund primarily because he had remarried and assumed the support of his new wife and her daughter. On appeal, the supreme court reversed this aspect of the

order, noting that the appellee was actually better off financially than he was at the time of the divorce. The court also stated:

> Appellee mainly relies upon the fact of his remarriage to justify a modification of the decree. In *Bostic v. Bostic*, 229 Ark. 127, 313 S.W.2d 553, this Court, in quoting from 27 C.J.S., Divorce, § 322, p. 1245, said:
>
> The fact that a divorced husband has remarried or was contemplating remarriage is not alone ground for reducing the amount of the allowance, although it is a circumstance that may be considered in weighing the equities of the situation; and the same rule applies to the remarriage of the wife, *at least in the absence of an assumption by the second husband of any obligation to support the children of the first marriage*; nor is the remarriage of both husband and wife to third persons, in itself, regarded as such a change of circumstances as requires a modification of the allowance.
>
> Certainly, the remarriage is not a ground for modification in this case; the record reflects that Mr. Green married his present wife shortly after obtaining the divorce, and was well aware, at the time he asked the court, through his complaint, to enter the educational fund provision, that he was fixing to assume additional obligations, *viz.*, a second wife and a step-daughter.

232 Ark. at 870-71, 341 S.W.2d at 43 (emphasis added).

■ The child-support chart and the criteria used for deviating from it are not conclusive, and there may be other matters in addition to the child-support chart that have a strong bearing upon determining the amount of support. *Arkansas Dep't of Human Servs. v. Forte, supra.* Similarly, the chancellor may consider appellee's commuting expenses in making this determination. It is permissible for the chancellor to consider the effect of an increase in a payor's child-support obligation on his ability to pay his bills. *Roland v. Roland,* 43 Ark. App. 60, 859 S.W.2d 654 (1993).

■ ■ On *de novo* review of a fully developed chancery record, the appellate court may enter the order that the chancellor should have entered, or it may remand if the court concludes that justice would be better served. *Office of Child Support Enforcement v. Longnecker, supra.* We note that, at the August 1999 hearing, appellee testified that his wife expected to complete her work toward her master's degree in about a year and a half. In our view, justice would be better served to remand this action so that, if the chancel-

lor wishes, he may take additional evidence about appellee's current financial condition, including whether appellee's wife has plans to re-enter the job market and whether she has taken any steps to collect child support from her son's biological father. Therefore, we reverse the chancellor's decision and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

PITTMAN and HART, JJ., agree.